Gerald G. ROTH; Logan M. Ammon, Appellants,

v.

SAWYER–CLEATOR LUMBER COMPANY, Employee Stock Ownership Plan; Charles J. Sawyer; Clifford E. Sawyer, Appellees.

No. 93–1023.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1993.

Decided Feb. 16, 1994.

**916**

Counsel who presented argument on behalf of the appellant was George R. Serdar of Minneapolis, Minnesota.

Counsel who presented argument on behalf of the appellee was Marc J. Manderscheid of St. Paul, Minnesota. Appearing on the brief was Bruce J. McNeil.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

MAGILL, Circuit Judge.

Plaintiffs Gerald R. Roth and Logan M. Ammon appeal from the district court's order granting summary judgment to defendants Charles J. Sawyer and Clifford E. Sawyer (the trustees). The plaintiffs claim that the district court erred by finding that the trustees satisfied their fiduciary duties under ERISA[1] by securing deferred payments of the plaintiffs' retirement benefits under an employee stock ownership plan (ESOP) with the stock of the Sawyer–Cleator Lumber Company (the Company). We reverse and remand.

## I. BACKGROUND

The Company conducted a retail and wholesale lumber business in the Minneapolis–St. Paul area for many years. In 1975, the Company established its ESOP to provide retirement benefits to its employees. Under the ESOP, each participant had an account consisting of Company stock and one consisting of other investments. The ESOP provided several methods of distributing accumulated benefits to retiring participants. One method was the "put option," under which a participant could require the Company to purchase his stock. The Internal Revenue Code gives participants in ESOPs the right to demand that the employer purchase the stock where no public market exists for it. See 26 U.S.C. § 409(h)(1)(B). The regulations, in turn, allow the ESOP itself to assume the employer's rights and obligations under the put option. See 29 C.F.R. § 2550.-408b–3(j) (1993).

Roth and Ammon are former employees of the Company who retired in 1988 and 1989, respectively. When the plaintiffs retired, Charles Sawyer and Clifford Sawyer were the ESOP's trustees. On retirement, both Roth and Ammon chose to exercise their put options. Each plaintiff sold his Company stock back to the ESOP, see id., and in return received a promissory note providing for periodic payments from the ESOP over a ten-year period.[2] Federal law allows participants to defer payments from the sale of such stock when "adequate security and a reasonable interest rate are provided for any

---

1. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

2. Roth and Ammon also received payments directly from the ESOP which partially satisfied the ESOP's obligations to them.

credit extended." *Id.* § 2550.408b–3(*l* )(4); *see also* 26 U.S.C. § 409(h)(5)(B) (providing that there must be "adequate security" for deferred payments on put options). To secure the payments, the ESOP granted Roth and Ammon security interests in the stock each had sold to it.

After Roth and Ammon retired, the Company experienced financial difficulties. It ceased operations in December 1990 and discontinued its contributions to the ESOP. Without further contributions from the Company, the ESOP had insufficient assets to pay the promissory notes and its other obligations in full. As a result, the trustees decided to cease further payments to Roth and Ammon until they could determine how to allocate the ESOP's remaining assets. Thus, the ESOP defaulted on the payment that was due to Roth and Ammon on January 1, 1991. In February 1991, creditors forced the Company to file for Chapter 7 bankruptcy. Bankruptcy rendered the Company's stock, and thus plaintiffs' security interests, worthless.

Plaintiffs brought suit in June 1991, asserting both state and federal claims against the trustees and the ESOP. The defendant trustees answered and sought a declaratory judgment regarding their obligations to plan participants. Both parties then filed cross-motions for summary judgment. The district court dismissed the state law claims and granted summary judgment to the trustees on the plaintiffs' breach of fiduciary duty claim. The court found that the trustees fulfilled their fiduciary duties because the Company stock that secured the plaintiffs' promissory notes constituted "adequate security" under federal law. The plaintiffs' only claim on appeal is that the district court erred by granting summary judgment to the trustees on the breach of fiduciary duty claim.

## II. DISCUSSION

Congress enacted ERISA in 1974 to provide retirement security to employees by regulating the structure and operation of retirement plans. As we explained in *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993), an ESOP is a type of ERISA plan that invests primarily in the stock of the employer creating the plan. Under ERISA § 404, trustees of retirement plans must fulfill their responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B) (codifying ERISA § 404). If a trustee fails to meet § 404's prudent person standard, he may be held personally liable for any losses to the plan that result from his breach of duty. *See id.* § 1109(a) (codifying ERISA § 409). The plaintiffs claim that the trustees breached their fiduciary duties under § 404 because they failed to investigate the propriety of securing the plaintiffs' promissory notes with Company stock.

### A. Breach of Fiduciary Duty

In *Martin,* 965 F.2d at 671, we held that a breach of fiduciary duty claim involves a three-step analysis. ERISA plaintiffs bear the burden of proving a breach of fiduciary duty and a prima facie case of loss to the plan. *Id.* Once the plaintiff has satisfied these burdens, "the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by … the breach of duty." *Id.* As the party moving for summary judgment, however, the trustees can prevail only by demonstrating the absence of a genuine issue of material fact either on elements of the claim for which the plaintiffs bear the burden of persuasion at trial or on elements for which the trustees themselves bear the burden of persuasion at trial. Thus, the first question is whether the trustees have satisfied their summary judgment burden as to the breach of fiduciary duty component of the *Martin* analysis.

■ Courts have developed standards for analyzing whether a fiduciary has satisfied ERISA's standard of care. Section 404's prudent person standard is an objective standard, *see Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), that focuses on the fiduciary's conduct preceding the chal-

lenged decision. *See id.* (asking whether " 'trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment' ") (quoting *Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984)). *See generally* James F. Jorden et al., *Handbook on ERISA Litigation* § 3.03[A] (1992) (discussing prudent person standard). Thus, the prudent person standard is not concerned with results; rather, it is a test of how the fiduciary acted viewed "from the perspective of the 'time of the [challenged] decision' rather than from the 'vantage point of hindsight.' " *Katsaros,* 744 F.2d at 279 (quoting *American Communications Ass'n v. Retirement Plan,* 488 F.Supp. 479, 483 (S.D.N.Y.), *aff'd,* 646 F.2d 559 (2d Cir.1980)). "Under this standard, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries." *Schaefer v. Arkansas Medical Soc'y,* 853 F.2d 1487, 1491 (8th Cir.1988).

■ Besides the general statutory duty of § 404, federal regulations specifically provide that plan trustees must ensure that "[t]he provisions for payment under a put option [are] reasonable. The deferral of payment is reasonable if adequate security and a reasonable rate of interest are provided for any credit extended. . . ." 29 C.F.R. § 2550.-408b–3(*l* )(4). We believe that this regulation should be interpreted in conjunction with an ERISA trustee's fiduciary duties under § 404. That is, whether a trustee is liable for breach of duty here does not depend on whether the security he provided ultimately proved to be inadequate. So holding would improperly focus the breach of duty inquiry on results and ignore the process by which a trustee made his decision.

■ Nor do we believe, as the trustees suggest here, that providing security that is equal in value to the retiree's loan to the plan at the time of the transaction in itself satisfies a fiduciary's duty. Adopting this standard would also ignore the trustee's conduct by relieving him of any duty to evaluate whether the security would retain its value over the term of the loan. Rather, we conclude that the regulation and § 404 can be harmonized by focusing the inquiry on the trustee's conduct under § 404's standards. Thus, we agree with the plaintiffs that the issue is whether the trustees' conduct before making the decision to secure the plaintiffs' notes with Company stock was objectively reasonable under the circumstances.[3]

We find that the trustees have failed to show that there are no genuine issues of material fact regarding the reasonableness of their conduct. The undisputed facts in the record do not support summary judgment for the trustees. The parties agree that the trustees hired an independent appraiser to value the stock for purposes of determining the amount of benefits to which each plaintiff was entitled and an attorney to draft the agreements relating to the put option transactions. That they hired an appraiser might satisfy the prudence standard, but there is insufficient evidence in the present record to determine whether the appraisal adequately informed the decision to secure the notes. We do not know what the appraiser based his calculations on or what the results of his analysis even mean. *Cf. Donovan v. Cunningham,* 716 F.2d 1455, 1474 (5th Cir.1983) ("An independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled. It is a tool and, like all tools, is useful only if used properly."), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). If the appraisal represented simply a present valuation of the stock but did not incorporate an analysis of the future prospects of the Company, for instance, the appraisal would be of little value in determining whether the stock would adequately secure the promissory notes over their ten-year term. Similarly, that the trustees consulted an attorney is relevant, but not dispositive. There is evidence, for

---

3. We note that the district court improperly applied a subjective test to the trustees' conduct: "The plaintiffs have put forward no evidence and the court has no reason to believe that the *trustees believed* the security would be inadequate to cover a default by the [ESOP] on the promissory notes." *Roth v. Sawyer–Cleator Lumber Co. Employee Stock Ownership Plan,* 805 F.Supp. 1475, 1481 (D.Minn.1992).

instance, that the trustees did not discuss the issue of how to secure the promissory notes with the attorney. In short, that the trustees hired an appraiser and an attorney does not entitle them to summary judgment on the ground that they fulfilled their fiduciary duties as a matter of law.

There also is evidence in the record tending to show that the trustees' conduct was deficient. The plaintiffs cite deposition testimony, for instance, suggesting that the trustees did very little to evaluate the propriety of securing the notes with Company stock. Moreover, there is evidence that, around the time that both plaintiffs retired, the trustees should have known that the Company was losing business and had poor prospects for the future. This evidence could support a judgment at trial for the plaintiffs on the issue of breach of fiduciary duty. Thus, we believe that what the trustees did and whether what they did was reasonable are factual questions that preclude granting them summary judgment on this basis.

## B. Causal Connection Between Breach and Loss

The district court may have granted summary judgment on the ground that there was no causal connection between the trustees' alleged breach of duty and a loss to the ESOP. The court devoted much discussion to the Company stock itself, independent of the steps that the trustees took in making the decision to secure the notes. For instance, the court reasoned that the stock constituted adequate security because it was the only collateral that the ESOP could offer the plaintiffs, it was "something in addition to and supporting the promissory note[s]," and because "it is common commercial practice for a lender to take a security interest in the object purchased with the borrowed money." *Roth v. Sawyer–Cleator Lumber Co. Employee Stock Ownership Plan*, 805 F.Supp. 1475, 1481, 1482 (D.Minn.1992). These factors do not relate to breach of duty because they do not concern the conduct of the trustees. Indeed, as the foregoing discussion suggests, the court could not analyze how the trustees acted because there are disputed facts as to their conduct.

 Under the prudent person standard, the relevance that the facts relating to the stock hold is that they tend to show that the trustees' decision was objectively reasonable regardless of the process by which they reached it and thus that there was no causal connection between their allegedly deficient conduct and a loss to the ESOP. Even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway. *Cf. Fink v. National Sav. & Trust Co.*, 772 F.2d 951, 962 (D.C.Cir.1985) (Scalia, J., concurring in part and dissenting in part) (arguing that where a fiduciary fails to investigate investment decisions, he is not liable for damages if he "happened—through prayer, astrology or just blind luck—to make ... objectively prudent investments"). The trustees are not entitled to summary judgment on the causation theory that a hypothetical prudent fiduciary would have decided to secure the plaintiffs' notes with Company stock. To say that their decision was objectively reasonable would require taking into account everything that the trustees *should have known* at the time of their decision. *See id.* We do not know what they should have known because the relevant facts are disputed. Thus, the causal connection between breach and loss, like breach itself, is a fact-intensive inquiry that is not susceptible to summary judgment in this case. Because it is a case-specific question, we simply cannot say whether a hypothetical prudent fiduciary would have secured the plaintiffs' promissory notes with Company stock.

## C. Loss to the ESOP

 The trustees may also escape personal liability even if they breached their duties and a hypothetical prudent fiduciary would not have made the same decision that they did if the trustees can show that there was no loss to the ESOP. The plaintiffs are suing under ERISA § 502(a)(2). *See* 29 U.S.C. § 1132(a)(2) (codifying ERISA § 502(a)(2)). Under § 502(a)(2), plan participants may sue trustees to enforce ERISA § 409. *See id.; id.* § 1109 (codifying ERISA § 409). Section 409 provides that trustees may be personally liable, but only for losses "*to the plan*," *id.* § 1109(a) (emphasis added); if individual plan participants suffer losses, but the plan does not, the trustee is not

personally liable for damages under § 409.[4] As noted above, once the plaintiff shows a breach of duty and a prima facie case of loss to the plan, the trustee then has the burden of persuasion to show that the loss was not caused by the breach. *Martin*, 965 F.2d at 671. The trustee may also prevail at trial by showing that there was in fact no loss to the plan or, on a motion for summary judgment, by showing that the plaintiff cannot establish a prima facie case of loss.

The trustees here argue that the ESOP did not suffer a loss as a result of their decision to secure the plaintiffs' notes with Company stock. We decline to review this argument, however, because the trustees did not raise the loss issue in their memorandum supporting their summary judgment motion; they raised it only in their reply to the plaintiffs' cross-motion for summary judgment. *See* II Joint App. at 535. Thus, the trustees, as the moving party, did not satisfy their burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), of informing the district court and the opposing party that the absence of loss to the plan was a basis for *their* summary judgment motion. We note that the plaintiffs have never proffered evidence of loss to the plan, which they must do to prevail on a breach of duty claim. Regardless of this failure of proof, however, our holding is based on the fact that the trustees never made loss to the plan an issue in their motion for summary judgment. On remand, they may demonstrate that the ESOP did not suffer losses, but they cannot prevail on summary judgment where they failed to alert the district court to the issue.

## D. Trustees are not Guarantors

■ Finally, we reject the trustees' policy argument that a finding of liability here would render them virtual guarantors of the plaintiffs' retirement benefits. It is true that, as we noted in *Martin*, 965 F.2d at 664, "an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan" because the Pension Benefit Guarantee Corporation's guarantee does not extend to ESOPs. Finding a fiduciary liable for failing to provide adequate security, however, no more makes him a guarantor than does finding a fiduciary liable for improperly investing a pension fund's assets in the garden-variety breach of duty case. The basis for personal liability in each case is the breach of duty, which is not a guarantee but a standard of conduct that Congress has imposed and that the fiduciary can satisfy by acting reasonably. *See* 29 U.S.C. § 1104(a)(1)(B). If trustees are personally liable in the "adequate security" context, it does not mean that they are guarantors of ESOP benefits; it only means that they breached their statutory duties and caused a loss to the plan. *See id.* § 1109(a). Thus, that Congress did not guarantee ESOP benefits is not a reason to relieve a trustee of the duty to investigate how to secure deferred payments on put options.

On remand, the district court should apply *Martin*'s three-step test to the plaintiffs' claim. In determining whether the trustees acted reasonably, the court should consider, among other factors, if they investigated the future prospects of the Company and the propriety of securing the plaintiffs' notes

---

4. Under § 409, "a fiduciary who breaches his fiduciary duty is liable to the plan—not the beneficiaries individually." *Walter v. International Ass'n of Machinists Pension Fund*, 949 F.2d 310, 317 (10th Cir.1991). Thus, as the district court correctly noted, "a breach of fiduciary duty claim puts money back into a plan." *Roth*, 805 F.Supp. at 1478. "To get the money out of a plan, a participant must make a claim for benefits." *Id.* Participants may bring such claims under ERISA § 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B) (codifying ERISA § 502(a)(1)(B)). The plaintiffs, however, do not appeal the district court's dismissal without prejudice of their § 502(a)(1)(B) claims.

Moreover, in their motion for summary judgment, the plaintiffs argued that ERISA § 502(a)(3)(B) supported their claim. *See* I Joint App. at 20; 29 U.S.C. § 1132(a)(3)(B) (codifying ERISA § 502(a)(3)(B)). Some circuits have held that § 502(a)(3)(B) gives plan participants a direct action against fiduciaries to recover damages that they personally suffered as a result of a breach of duty. *See, e.g., Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir.1993); *Warren v. Society Nat'l Bank*, 905 F.2d 975, 978–83 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991). We have held, however, that the language "other appropriate equitable relief" in § 502(a)(3)(B) does not encompass damages. *See Novak v. Andersen Corp.*, 962 F.2d 757, 761 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993).

with the stock and evaluated possible alternative methods of securing the notes. There is no formula, however, for determining whether an ERISA fiduciary's conduct was reasonable, so the court should take into account all relevant circumstances. Moreover, in its order granting summary judgment to the trustees, the district court assumed for purposes of its analysis that the ESOP sustained losses because the plaintiffs' security interests lost their value. Under *Martin*, the plaintiffs must establish a prima facie case of loss to the plan to prevail. *See* 965 F.2d at 671. The trustees may prevail by showing that the ESOP did not suffer any losses or that any losses it did suffer were not a result of their conduct.

### III. CONCLUSION

We reverse the judgment of the district court granting summary judgment to the trustees and remand for further proceedings consistent with this opinion.