BOWMAN, Circuit Judge.
Lenco, Inc., was a closely held corporation in Jackson, Missouri, that manufactured a variety of products. In 1984, Mercantile Bank was the trustee of Lenco’s Employees’ Stock Ownership Plan (ESOP), a plan under which Lenco employees owned Lenco stock. On April 5, 1984, Mercantile, acting as trustee of the ESOP, sold the ESOP’s. stock in Lenco to Jerry Ford in one of several transactions by means of which Ford acquired all of Lenco’s stock. Later that day Lenco’s ESOP Committee appointed Paul Mueller to replace Mercantile as trustee of the ESOP. The following day, Mueller had the ESOP buy back from Ford the Lenco stock it had sold him the day before, for the same price for which it had sold that stock. In the late 1980s Lenco began to experience financial problems, and on June 20, 1989, it filed for bankruptcy. Following Lenco’s bankruptcy, the ESOP lost the vast majority of its funds.
The Secretary of Labor subsequently brought this suit against Mercantile Bank,[2] alleging that Mercantile was liable under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 88 1001-1461 (1994), for the ESOP’s buy-back of Lenco stock. The Secretary alleged that Mercantile continued to have fiduciary duties to the ESOP despite the appointment of Mueller as successor trustee and thus was liable, although Mercantile did not itself conduct.the buy-back, because Mercantile failed to take action to prevent it and also because Mercantile failed to ameliorate the buy-back’s consequences to the ESOP when it was reappointed trustee of the ESOP after Mueller’s death in 1985. Following a bench trial, the District Court[3] entered judgment for Mercantile. The Secretary appeals.
Mercantile can be liable for the buy-back only if the buy-back was unlawful, of course. And the buy-back was unlawful only if Mueller, who actually conducted the buy-back, violated ERISA in doing so. The Secretary maintains that Mueller violated ERISA by failing adequately to investigate the value of the stock and by purchasing the stock for more than its fair market value, thereby breaching his fiduciary duties to the ESOP.
ERISA provides that an ESOP may purchase employer stock only for “adequate consideration,” which is defined as “in the case of an asset other than a security for which there is a generally recognized market [Lenco stock was such an asset because Len-co was a closely held corporation], the fail' market value of the asset as determined in good faith by the trustee.” 29 U.S.C. 88 1108(e)(1), 1002(18)(B). Even if a trustee fails to make a good faith effort to determine the fair market value of the stock, “he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway.” Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 919 (8th Cir.1994). Thus, if a prudent trustee would have purchased the Lenco stock for the price for which Mueller purchased it, then Mueller did not violate ERISA, regardless of whether he made a good faith effort to determine the fair market value of the stock.
In the trial, two expert witnesses, one called by the Secretary and one by Mercantile, presented opinions on the value of Lenco stock at the time of the buy-back. These experts came to very different conclusions. *422 Mercantile’s expert testified that Mueller paid less than the fair market value of the stock, whereas the Secretary’s expert testified that Mueller overpaid. After hearing these witnesses, the District Court concluded that “[e]ach expert was credible, and each expert’s methodology was sufficient to survive review.” Reich v. Mercantile Bank, N.A., No. 1:91CV00011 ELF, Memorandum and Order at 58 (E.D.Mo. Feb. 28, 1997). The court remained uncertain as to the precise value of the stock and as to whether Mueller paid too much. The court stated that Mueller “possibly, but not necessarily,” overpaid by as much as 12.6 percent for the stock. Id. at 60. The court also found that the fair market value of the stock, whatever it was precisely, was sufficiently close to what Mueller paid that, even if Mueller did overpay slightly, Mueller had no reason to know that he was overpaying. This amounts to a finding that a hypothetical prudent fiduciary in Mueller’s place could have and would have paid what Mueller paid for the stock.
The Secretary contends that the District Court wrongly determined the value of the stock. The determination of the value of the stock is a finding of fact, and we review it for clear error. See Fed.R.Civ.P. 52(a). Mueller, acting for the ESOP, bought the stock from Ford at the same price at which Ford had bought it from the ESOP the day before. The Secretary maintains that in so doing Mueller paid too much, because the value of Lenco stock had decreased during Ford’s acquisition of Lenco since Lenco had incurred substantial debt during the course of the acquisition. It may or may not be true as a general matter that, all other things being equal, an increase in debt reduces the value of a company’s stock. But the record shows that all things were not equal here. Lenco used most of the debt it incurred on April 5 to redeem many shares of its stock, also on April 5. As a result of the redemption, the ESOP, which had owned 33.3 percent of Lenco’s stock before Ford’s acquisition, acquired 63.2 percent of Lenco’s stock in the buy-back. Thus by selling its stock in Lenco and then buying it back at the same price, the ESOP was able almost to double its stake in Lenco. Mercantile’s expert, taking into account Leneo’s likely future earnings as of April 6, 1984, testified that the ESOP thereby improved its financial position. The Secretary’s expert, moreover, admitted that a decrease in the value of a-company’s stock due to an increase in that company’s debt may be offset by using the debt to redeem stock and thus to leave the remaining stockholders in ownership of a larger percentage of the company. The record thus amply supports the District Court’s finding that Mueller paid fair market value or very close to it for the stock.
Furthermore, the District Court did not err in concluding that, although Mueller might have overpaid for the stock, he had no reason to know that he was overpaying. Determining the value of a company’s stock is not an exact science. This is particularly true of the stock of a closely held corporation such as Lenco, because there is no continuously operating market for such stock. In order to hold that Mueller did not violate ERISA in conducting the buy-back, the District Court did not need to find that Mueller bought the stock for exactly, to the penny, its fair market value; the Court merely needed to find that a prudent fiduciary in Mueller’s place would have paid what Mueller paid. That is what the District Court found. We conclude that the District Court did not clearly err in finding that the value of the Lenco stock was such that a prudent fiduciary in Mueller’s place would have bought the stock for the price that Mueller paid. Accordingly, Mueller did not violate ERISA in conducting the buy-back. Because the buy-back was not in violation of ERISA, Mercantile, on any theory of the ease, cannot be liable for it under ERISA. We therefore need not address the issues concerning Mercantile’s conduct and whether that conduct was such that Mercantile was legally responsible for the buy-back.
We affirm the judgment of the District Court.

. The Secretary also named the ESOP as a defendant, so that full relief could be granted.

.The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.