Robert **REICH,** Plaintiff,

v.

**CONSTRUCTION LABORERS LOCAL NO. 1140, et al., Defendants and Third–Party Plaintiffs,**

v.

**Duane MARTIN, et al., Third– Party Defendants.**

**The OMAHA CONSTRUCTION INDUSTRY PENSION FUND, et al., Plaintiffs,**

v.

**PENSION AND WELFARE BENEFITS ADMINISTRATION OF the UNITED STATES DEPARTMENT OF LABOR, Defendant.**

Nos. 8:CV91–00280, 8:CV90–00602.

United States District Court, D. Nebraska.

Aug. 24, 1995.

Dean G. Kratz, McGrath, North Law Firm, Omaha, NE, Maynard H. Weinberg, Weinberg, Weinberg Law Firm, Omaha, NE, for Omaha Construction Industry Pension Fund, Leo A. DeWitt, Sr., James R. Polzin, Jim Timmins, Roy T. Wolf.

Dean G. Kratz, McGrath, North Law Firm, Omaha, NE, Maynard H. Weinberg, Weinberg, Weinberg Law Firm, Omaha, NE, John R. Douglas, Cassem, Tierney Law Firm, Omaha, NE, for Rodney Lindwall, Joe W. Dodd, Robert T. Owen, Dudley W. Rinaker, Cal Solem, trustee Robert G. Bartak, plaintiff.

Duncan A. Young, Young, White Law Firm, Omaha, NE, for Contractors, Labor-

ers, Teamsters & Engineers Pension Plan, Robert D. Blue, Cal G. Negus, Roger Stueckrath, Ralph Saar, Jim Timmons, Leonard J. Schaefer.

Paul W. Madgett, Assistant United States Attorney, Omaha, NE, Suzanne Windle, U.S. Department of Labor, Plan Benefits Security Division, Washington, DC, Duncan A. Young, Young, White Law Firm, Omaha, NE, Gail A. Perry, U.S. Department of Labor, Plan Benefits Security Division, Washington, DC, U.S. Department of Labor, Pension and Welfare Benefits Administration.

Paul W. Madgett, Assistant United States Attorney, Omaha, NE, Suzanne Windle, U.S. Department of Labor, Plan Benefits Security Division, Washington, DC, Robert P. Davis, U.S. Department of Labor, Office of the Solicitor, Kansas City, MO, Marc I. Machiz, Karen L. Handorf, Gail A. Perry, U.S. Department of Labor, Plan Benefits Security Division, Washington, DC, for U.S. Department of Labor, United States Secretary.

Maynard H. Weinberg, Weinberg, Weinberg Law Firm, Omaha, NE, for Local 1140 Construction Laborers.

John R. Douglas, Cassem, Tierney Law Firm, Omaha, NE, for Rodney Lindwall, Joe W. Dodd, Dudley Rinaker, Don Mathews, Cal Solem, Robert T. Owen, Robert G. Bartak, Roy Hurley, Art Deseck.

Roy Hurley, Omaha, NE, pro se.

Robert E. O'Connor, Jr., O'Connor & Associates, Omaha, NE, for Duane Martin.

Jeffrey A. Silver, Jeffrey Silver, Omaha, NE, for Dorothy Otte.

Robert J. Becker, Stalnaker, Becker Law Firm, Omaha, NE, for Leonard J. Schaefer.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201 *et seq.* and 29 U.S.C. § 1132.

In these consolidated cases, the plaintiff, Secretary of the United States Department of Labor (the "Secretary"), alleges that certain payments of interest from the Omaha Construction Industry Pension Fund (the "Fund" or "OCI Fund") violated the Employee Retirement Income Security Act of 1974 ("ERISA").

The OCI Fund is a multi-employer defined employee benefit plan under ERISA and is administered by a Board of Trustees. By virtue of Fund documents, Construction Laborers' Local No. 1140 ("Local 1140") and other unions made contributions to the OCI Fund on behalf of officials employed by the unions' salaried business agents and managers.

The parties' dispute centers around payments of interest earned by the OCI Fund on certain excess contributions. The defendants and third-party plaintiffs, Rodney Lindwall, Joe W. Dodd, Dudley Rinaker, Don Mathews, Cal Solem, Robert T. Owen, Robert G. Bartak, Roy Hurley and Art Desek (collectively the "Trustees"), were the members of the Board of Trustees of the OCI Fund when the payments of interest were made.

### MOTIONS FOR JUDGMENT

During the trial of this case, the Trustees and Local 1140 moved for judgment as a matter of law at the close of the Secretary's case and at the close of all of the evidence. See Fed.R.Civ.P. 52(c). The court took the motions under advisement, and at this time, the court finds and concludes that all motions pursuant to Fed.R.Civ.P. 52(c) presented during the trial of this case shall be, and hereby are, denied.

Therefore, pursuant to Fed.R.Civ.P. 52(a), the court now makes findings of fact and reaches conclusions of law as set forth in this "Memorandum and Order."

### STIPULATED FACTS

The following facts are derived from the stipulated "Uncontroverted Facts" in the "Order on Final Pretrial Conference" (filing 93) and are supported by the evidence at trial:

*The Excess Contributions*

During the period applicable to this case, the rates of contribution to the OCI Fund were set by a collective bargaining agreement ("CBA") between a multi-employer bargaining group (the "OBCEA") and various construction industry labor unions, including Local 1140. Before 1986, the Cement Masons Local 538, on behalf of its business agent, Duane Martin, made contributions to the OCI Fund which exceeded the rates specified in the CBA. During a meeting of the Fund Trustees on February 19, 1986, the Trustees first learned that excess contributions were made on behalf of Duane Martin.

*The Arbitration Proceeding*

Unable to agree whether the calculation of Martin's retirement benefit could legitimately include the excess contributions, the Trustees voted to submit the matter to arbitration. For purposes of the arbitration, the Trustees stipulated regarding the excess contributions on behalf of Duane Martin: "[i]n the event that it is determined that the excess contributions could not be made on behalf of Duane Martin, the total amount of the overpayments will be refunded to him, with interest."

In his decision dated September 22, 1986, the arbitrator, Henry Grether, ruled that the Cement Masons Union could not contribute more than the amount specified in the CBA and that Martin was entitled only to the pension benefit which he would have received if the Cement Masons Union had contributed to the Fund the correct amount determined by the rates specified in the CBA. Based upon the stipulations of the parties to the arbitration proceeding, the Trustees refunded to Duane Martin a total of $4,645.47 in excess contributions plus net earnings or interest totalling $3,530.77 relative to the excess contributions.

*The Additional Excess Contributions*

The Trustees then directed the Fund Administrator to find any other Fund participants for whom excess contributions had also been made. Participants identified by the Fund Administrator included Leonard Schaefer, Henry Schaefer, Norman Sunderman, Carl Seberg, Roy Hurley, Richard Otte and Jerry Leary. For each of the aforenamed employees, the employers had made excess contributions to the pension fund in lieu of wage increases for the employee-participants.

After arbitration, the OCI Fund Trustees caused excess contributions plus interest to be refunded to Leonard Schaefer, Henry Schaefer, Norman Sunderman, Carl Seberg, Roy Hurley, and the widow of Richard Otte. In addition, $1,014 was transferred to the Contractors, Laborers, Teamsters and Engineers Pension Fund as the refund for Jerry Leary.

The Fund distributed checks for the excess contributions, together with interest earned on those contributions, directly to all the above-named participants, except for the transfer on behalf of Jerry Leary, as noted above, and, except regarding Richard Otte, whose refund was issued to his widow. However, Leonard Schaefer, Henry Schaefer and Norman Sunderman, upon receipt of their refunds, returned their checks, requesting that their checks be issued instead to their employer, Local 1140, so that the appropriate employment taxes could be withheld.

The Secretary does not complain about the refunds of excess contributions. Consequently, this action exclusively concerns the decision by the Trustees that the reimbursement of excess contributions should be accompanied by the payment of interest on the refunded contributions. The parties agree that the Fund paid approximately $43,684.28 in interest earned on the excess contributions held by the Fund.

**ALLEGED VIOLATIONS OF ERISA**

The Secretary claims that the Fund Trustees, by paying interest on the refunded contributions, violated sections 403(c)(1); 404(a)(1)(A) & (B); and 406(a)(1)(A) & (D) of ERISA [29 U.S.C. §§ 1103(c)(1); 1104(a)(1)(A) & (B); and 1106(a)(1)(A) & (D)]. The Secretary also claims that Local 1140 violated subsections 406(a)(1)(A) & (D) of ERISA, 29 U.S.C. § 1106(a)(1)(A) & (D) as the result of Local 1140's receipt of the interest paid to the Schaefers and Sunder-

man when they returned their distribution checks to Local 1140.

29 U.S.C. § 1103 (§ 403 of ERISA) requires the assets of employee benefit plans covered by ERISA (with limited exceptions) to be held in trust by one or more trustees. 29 U.S.C. § 1104 (§ 404 of ERISA) generally defines the standards to which fiduciaries are held in the discharge of their duties under ERISA. 29 U.S.C. § 1106 (§ 1106 of ERISA) supplements 29 U.S.C. § 1104 by specifically prohibiting fiduciaries from engaging in certain transactions.

### 29 U.S.C. § 1104(a)(1)(A) & (B)

The subsections of 29 U.S.C. § 1104 applicable to this case state that:

... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; ....

29 U.S.C. § 1104(a)(1)(A) and (B).

■ A court utilizes a deferential standard to evaluate a decision by trustees of a pension plan unless the trustees' decision stems primarily from self-interest or a similar wrongful motive. See, e.g., *Caterino v. Barry*, 8 F.3d 878 (1st Cir.1993): "[W]here, as here, there is no claim of trustee self-dealing or the like, we do not simply substitute our judgment for that of the trustees. We review the trustees' decision at a distance.... '[U]nless it is shown by a preponderance of the evidence that the [fiduciaries'] decisions were primarily based on perpetuating themselves in office, or some other breach of fiduciary duty such as fraud, overreaching, lack of good faith, or being uninformed, a Court will not substitute its judgment for that of the [fiduciaries].'" *Id.* at 883 (interpreting 29 U.S.C. § 1104(a)(1)).

In addition, the "prudent person" standard of care required of pension plan trustees under 29 U.S.C. § 1104(a)(1) focuses on the trustees' conduct that preceded the challenged decision. As the court noted in *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 917–918 (8th Cir.1994):

[T]he prudent person standard is not concerned with results; rather it is a test of how the fiduciary acted viewed "from the perspective of the 'time of the [challenged] decision' rather than from the 'vantage point of hindsight.'" ... [T]he issue is whether the trustees' conduct before making the decision ... was objectively reasonable under the circumstances.

*Id.* at 918 (citations omitted).

■ The Secretary maintains that the Trustees violated their duty to discharge their duties in the sole interest and for the exclusive benefit of the plan's participants and that the Trustees failed to act with the care, skill, prudence, and diligence of a prudent trustee. Specifically, the Secretary alleges that the Trustees violated their fiduciary duty and the duty of care imposed by section 1104(a)(1) of ERISA when they issued checks to a contributing employer (Local 1140) and to individual participants by paying interest in the aggregate amount of $43,684.28 from Fund assets.

The Trustees' decision to refund earnings or interest on the excess contributions was made in November 1986, after the ruling in the arbitration proceeding. According to the Secretary, the Trustees should have known that earnings attributable to excess contributions are, and must remain, plan assets. The court, therefore, examines, in light of the legal precedent available to the Trustees, whether the Secretary is correct that the Trustees should have known that payment of interest earned on excess contributions violated ERISA.

*Legal Precedent Available to the Trustees*

First, ERISA provides no statutory direction concerning the payment of interest on excess contributions to a pension plan. 29 U.S.C. § 1103(c) concerning refunds of con-

tributions made by mistake does not address the issue of earnings on those contributions.

In addition, the OCI Fund is a "defined benefit plan" and not a "defined contribution plan." However, ERISA's definition of a defined contribution plan expressly includes income earned on the participants' accounts, while the definition of a defined benefit plan is silent on the subject of interest earned on contributions. In a defined benefit plan, the amount of the benefit to be received by each participant is fixed by a formula, not by the amount in an individual account, and the contributions needed to fund those "defined benefits" are determined by actuarial calculations. 29 U.S.C. § 1054(a)–(c). In a defined contribution plan, on the other hand, the balance of the individual account constitutes the benefit. 26 C.F.R. § 1.411(b)–1(a)(1).

Thus, a "defined contribution plan" means "a pension plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34) (emphasis added). A "defined benefit plan," however, is defined as "a pension plan other than an individual account plan...." 29 U.S.C. § 1002(35).

Regarding possible guidance from agency regulations, the Trustees refer to Revenue Ruling 69–277, 1969–1 C.B. 116 which expresses that a pension plan will not fail to be a qualified plan merely because the participants are allowed to withdraw their voluntary contributions, **"together with the accumulated interest thereon"** before termination of their employment. See also Revenue Ruling 73–581, 1973–2 C.B. 131.

The Secretary challenges the application of Revenue Ruling 69–277 to defined benefit pension plans, as distinguished from defined contribution plans, and points to Revenue Ruling 77–200, 1977–1 C.B. 98 which, regarding the return of an employer's contributions made by reason of mistake of fact or law, states in part:

> The amount which may be returned to the employer is the excess of (1) the amount

contributed over (2) the amount that would have been contributed had there not occurred a mistake of fact or a mistake in determining the deduction. Earnings attributable to the excess contribution may not be returned to the employer, but losses attributable thereto must reduce the amount so returned.

The Secretary argues that the trustees should have realized that in view of Revenue Ruling 77–200, earnings attributable to excess contributions could not be paid from a fund. The Trustees, on the other hand, interpret Revenue Ruling 77–200 as a limitation on the return of contributions and earnings **"to the employer."** According to the Trustees, the Secretary fails to distinguish between a refund of overpayments and the payment of earnings on overpayments to employers as opposed to a refund to participants and beneficiaries whom ERISA was enacted to protect. Therefore, the Trustees assert that Revenue Ruling 77–200 (which has been superseded) did not address the circumstances of this case, namely, returning **to employee-participants** their contributions and net earnings on the contributions.

Most of the cases cited by the Secretary were decided long after the Trustees' decision in 1986 to refund interest to the participants. For the proposition that interest should not be included in any refund to an employer regarding mistaken overpayments to a multi-employer pension plan, see, e.g., *Whitworth Brothers Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 982 F.2d 1006, 1019 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 67, 126 L.Ed.2d 36 (1993); *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1058 n. 6 (3d Cir.1989); *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 967 (5th Cir.1989); *Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers,* 814 F.2d 79, 83 (2d Cir.1987).

In one early decision, *Peckham v. Board of Trustees of International Brotherhood and Allied Trades Union,* 724 F.2d 100 (10th Cir.1983), the court, deferring to a proposed agency regulation, held that the anti-inure-

ment policy of ERISA bars an award of interest on a refund. The Secretary does not deny, however, that the proposed regulation underlying the *Peckham* decision subsequently was never enacted or adopted.

However, the Trustees and Local 1140 point out that the refunds in the present case were not made "to the employer," but were made to participants of the plan. In addition, the Trustees and Local 1140 refer to judicial decisions in conflict with the cases cited by the Secretary. See, e.g., *South Central United Food & Commercial Workers Unions v. C & G Markets, Inc.*, 836 F.2d 221, 225 (5th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988) (employer seeking refund of overpaid contributions is entitled to simple interest from the date of overpayment; when employer made overpayments in some years and was delinquent in others, overpayments plus interest may be offset against delinquencies).

The issue whether the Trustees' decision in 1986 was objectively reasonable cannot be evaluated or answered by "20–20 hindsight" gained from rulings in later years. The court finds that there existed no clear legal guidance in November 1986 on the question whether excess contributions that are returned to plan participants should be accompanied by the payment of net earnings on those contributions.

Rodney Lindwall, a general contractor who has served as the Chairman of the Board of Trustees of the OCI Fund for the last twenty years and has been one of the management Trustees since the inception of the Fund, testified that the Trustees devoted considerable thought, discussion and investigation to the issue of what to do about the excess contributions and the earnings on those contributions. Concerning the reason for the arbitration in 1986, Lindwall testified:

[E]ven our attorneys had elements of disagreement on the question. We got no satisfactory answer from our consultant. And, you know, we're lay people working in a very complex situation here and we wanted to make absolutely sure that we did it the right way. So we sent the matter to arbitration and the attorney selected as the arbitrator, was a distinguished former head of the University of Nebraska Law School, Henry Grether.

Also, on the matter of interest paid on refunded contributions, Lindwall testified that such payment

.... seemed to us absolutely fair and equitable. After all, these people were not trying to do anything illegally. Let's—I'm talking about like Mr. Martin. What he was doing was voluntarily putting in more money in our pension plan to insure a better retirement benefit. Can't very well quarrel with that. These are people with modest means. And we're also talking about a substantial amount of money. During these four or five years that he was contributing, we—I suppose it was five, six, $7,000. It seemed absolutely wrong for us to take somebody's substantial sum of money like that, park it in our fund for five or six years, and then come along and tell him subsequently we've changed our mind or we didn't know about this and you're not going to get this excess increase in your pension, instead we're going to give it back to you. And it just seemed to us to be absolutely fair at the same time that we returned their excess contributions that we give them back the money that we earned on those excess contributions during that period of time. If we had lost money, I'm sure we would have done it the other—you know, we would have deducted it from their contributions.

The court agrees with the Trustees that they fulfilled their fiduciary duty when they initially issued to the individual participants checks for the reimbursement of excess contributions and interest paid on the contributions. The court finds the testimony of Rodney Lindwall entirely credible, and the court concludes, in light of the evidence, that the Trustees in good faith believed that they were in possession of funds which could not be retained by the OCI Fund and which properly belonged to individual pension plan participants and beneficiaries. The Trustees' belief was objectively reasonable in light of the decision in the arbitration proceeding and the meager and conflicting legal precedent available to guide the Trustees. The court finds that the Trustees' conduct in making

the challenged decision, and prior thereto, was prudent, diligent and reasonable under the circumstances.

### 29 U.S.C. § 1106(a)(1)(A) & (D)

The subsections of 29 U.S.C. § 1106 applicable to this case state:

> ... (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A) sale or exchange ... of any property between the plan and a party in interest;
>
> * * [or] * *
>
> (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; ....

29 U.S.C. § 1106(a)(1)(A) and (D).

Section 1106(a)(1) applies to the Fund's Trustees as fiduciaries. Concerning Local 1140, a "party in interest" relative to an employee benefit plan includes "an employer any of whose employees are covered by such plan." See 29 U.S.C. § 1002(14)(C).

■ A "party in interest" who violates 29 U.S.C. § 1106(a)(1) may be liable pursuant to 29 U.S.C. § 1132(a)(5). *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir.1995). Under 29 U.S.C. § 1132(a)(5), the Secretary may sue to enjoin an "act or practice" which violates ERISA or obtain other appropriate equitable relief to redress such violation. *Id.* Accord *Reich v. Rowe*, 20 F.3d 25, 31 n. 7 (1st Cir.1994): "The fact that § 1106 imposes the duty to refrain from prohibited transactions on fiduciaries and not on the parties in interest is irrelevant for our purposes because § 1132(a)(5) reaches 'acts or practices' that violate ERISA and prohibited transactions violate § 1106." Thus, the Secretary may bring an action against a nonfiduciary "party in interest" who engages in a transaction prohibited by section 1106(a)(1).

■ Regarding 29 U.S.C. § 1106(a)(1)(A), the Secretary has identified no direct or indirect "**sale** ... of any property between the plan and a party in interest" or "**exchange** ... of any property between the plan and a party in interest." (Emphasis added.) Also, the Secretary has not cited any legal authority, or submitted any written or oral argument, explaining how subsection 1106(a)(1)(A) applies to this case. In the absence of any legal authority or factual basis supporting a "sale" or "exchange," the court finds and concludes that the Secretary's claims against Local 1140 and the Trustees premised upon 29 U.S.C. § 1106(a)(1)(A) are without merit.

In reference to 29 U.S.C. § 1106(a)(1)(D), the Secretary contends that the Trustees caused the OCI Fund to "transfer ... assets of the plan" to Local 1140, a party in interest, or that the Trustees caused assets of the plan to be "use[d] ... for the benefit of" Local 1140. More specifically, the Secretary asserts that Local 1140 took possession of, and exercised control over, the money returned by Sunderman and the Schaefers. According to the Secretary, once the reissued check to Local 1140 was deposited in Local 1140's account, a prohibited transaction occurred, and Local 1140's subsequent disposition of the proceeds from the check is irrelevant.

■ Regarding the alleged "transfer," the court finds that the Trustees did not cause a "transfer [of plan] assets" to Local 1140 which was cooperating with the participants who were employees of the Local and who wanted taxes to be withheld from their refunds. The Fund's reissuance of the checks initially issued to Sunderman and Schaefers, that is, reissued checks payable to Local 1140, occurred at the request of those three participants. Once Sunderman and the Schaefers received their checks, those checks became "assets" of those participants. The fact that the three participants subsequently chose to have their checks cancelled and requested reissuance of a check payable to their employer for the purpose of withholding taxes, or the fact that the Trustees honored that request, does not transform a reasonable and bona fide refund to participants into a breach of fiduciary duty. Local 1140 acted merely as a conduit for the refunds, directing part of the participants' funds to the tax authorities and returning the primary part of the funds to the participants.

▮ The only remaining issue is whether, within the meaning of 29 U.S.C. § 1106(a)(1)(D), the record establishes a "use" of plan assets "for the benefit of a party in interest" (Local 1140). Again, the Secretary contends that Local 1140 retained possession of the funds returned by Sunderman and the Schaefers long enough to derive some "benefit."

In *Reich v. Compton,* 57 F.3d 270 (3d Cir.1995), the Third Circuit stated that a transaction prohibited by subsection 1106(a)(1)(D) occurs when:

> (1) the person or entity is [a] fiduciary with respect to [the] plan; (2) the fiduciary "cause[s]" the plan to engage in the transaction at issue; (3) the transaction "use[s]" plan assets; (4) **the transaction's use of the assets is "for the benefit of" a party in interest;** and (5) the fiduciary "knows or should know" that elements three and four are satisfied.

*Id.* at 278 (emphasis added). The court concluded, in *Reich v. Compton,* supra, that "element four requires proof of a subjective intent to benefit a party in interest." *Id.*

> In addition, if element four did not require a subjective intent to benefit a party in interest, section 406(a)(1)(D) would produce unreasonable consequences that we feel confident Congress could not have wanted.... If [as the Secretary had asserted] "for the benefit of" is read to mean "having the effect of benefitting," section 406(a)(1)(D) would appear to prohibit a fiduciary from causing a plan to engage in any transaction that he or she should know would result in any form or degree of benefit for any party in interest, even if the transaction would be highly advantageous for the plan and the benefit for the party in interest would be unintended, indirect and slight.

\*   \*   \*   \*   \*   \*

We thus find strong support for a subjective intent requirement in the language of section 406(a)(1)(D), and finding no contrary evidence in the legislative history, we conclude that element four requires proof

of a subjective intent to benefit a party in interest.

*Id.* at 279–280.

The Secretary did not present any evidence of a subjective intent on the part of the Trustees, Local 1140 or anyone else to confer a benefit on Local 1140 in connection with the refunds. Furthermore, Local 1140 actually lost money as the result of agreeing to receive a reissued check for purpose of withholding taxes for Sunderman and the Schaefers because Local 1140 then had to pay the employer's part of the employment taxes on the excess contributions (wage substitutes) refunded to Sunderman and the Schaefers.

▮ Finally, the Secretary argues that even if the check reissued to Local 1140 at the request of Sunderman and the Schaefers did not violate 29 U.S.C. § 1106(a)(1), the plan participants who received the refunds of interest are "parties in interest" who may not receive or use plan assets. The Secretary cites 29 U.S.C. § 1002(14)(H) which defines "party in interest" to include:

> an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors) ... of
>
> [ (C) an employer any of whose employees are covered by such plan] [or of]
> [ (D) an employee organization any of whose members are covered by such plan.]

In other words, because participants who received refunds were union business managers, the Secretary contends that the participants received plan assets as "parties in interest." However, the court finds that the participants received refunds in their personal or individual capacity as plan participants and not as union officials.

### 29 U.S.C. § 1103(c)

29 U.S.C. § 1103 states in pertinent part that:

> ... the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

However, 29 U.S.C. § 1103(c)(1) is modified by 29 U.S.C. § 1103(c)(2)(A)(ii) which pertains to contributions made by an employer to a multi-employer plan "by a mistake of fact or law." In such event, the "anti-inurement" provision of 29 U.S.C. § 1103(c)(1) "shall not prohibit the return of such contribution ... to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake."

Much of what has been stated in this Memorandum and Order in reference to 29 U.S.C. § 1106(a)(1)(D) applies equally to 29 U.S.C. § 1103(c)(1). The court finds and concludes that none of the refunds "inured to the benefit" of Local 1140. The refunds to Sunderman and the Schaefers were simply passed through Local 1140 for tax withholding purposes. In addition, Local 1140 paid its own share of the employment taxes on the excess contributions which had been paid into the Fund as wage substitutes.

Furthermore, the Secretary presented no evidence that the refunds rendered the OCI Fund underfunded or unstable or that the refunds in any way impaired the financial integrity of the Fund. The Secretary's demand that Local 1140 "disgorge" its "ill-gotten gains" has no basis in the factual circumstances of this case.

In summary, the court finds and concludes that the Secretary has not established a right to recovery pursuant to 29 U.S.C. §§ 1103, 1104 or 1106. Judgment will be entered in favor of the Trustees and Local 1140 and against the Secretary on the Secretary's Complaint in Case No. 8:CV91–00280 which is consolidated with Case No. 8:CV90–00602.

## STATUTE OF LIMITATIONS

The Trustees and Local 1140 argue that the statute of limitations in 29 U.S.C. § 1113(2) bars the Secretary's claims. However, the court finds that the evidence is too inconclusive and speculative concerning when the Secretary should be charged with knowledge of the alleged violation[s] of ERISA asserted in this case. Therefore, the court concludes that 29 U.S.C. § 1113(2) does not bar the Secretary's claims.

## DECLARATORY JUDGMENT

In Case No. 8:CV90–00602, the OCI Fund and its then-current Board of Trustees commenced an action against the Pension and Welfare Benefits Administration of the United States Department of Labor and sought a declaratory judgment that the payment of interest on excess contributions at issue in this case was lawful. In view of this Memorandum and Order, judgment shall be entered for the plaintiffs on their Complaint for Declaratory Judgment in Case No. 8:CV90–00602 against the defendant-Secretary.

## ATTORNEY FEES

Local 1140 has asserted that a judgment in its favor should include attorney fees pursuant to 28 U.S.C. § 2412. However, the court finds and concludes that, in light of the novelty of the issues presented in this case, the scarce and conflicting legal authority and the totality of the circumstances, the position of the Secretary was substantially justified, albeit incorrect. See 28 U.S.C. § 2412(d). As a result, Local 1140's claim for attorney fees shall be, and hereby is, denied.

## THIRD PARTY ACTION

In her Order dated October 13, 1994 (Filing No. 107), Magistrate Judge Kathleen A. Jaudzemis granted the "Motion for Separate Trials" (filing 96, Case No. 8:CV90–00602) filed by the Trustees as defendants and third-party plaintiffs. The Trustees' third-party claim seeks indemnity from the plan participants who received the payments of interest at issue in this case. In Filing No. 107, therefore, Magistrate Judge Jaudzemis severed the third-party claim for separate trial to be conducted, if appropriate, after resolution of the Secretary's claims against the Trustees and Local 1140. In view of this court's decision in favor of the Trustees and Local 1140, the "Third–Party Complaint" (Filing No. 27 in Case No. 8:CV91–00280) shall be, and hereby is, dismissed as moot.

Pursuant to Fed.R.Civ.P. 58, Judgment will be entered contemporaneously in accordance with this Memorandum and Order.