# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1824

_____

| | | |
|---|---|---|
| Gary Lee Eckelkamp, Bradley C. Hoemann, and Ronald A. Kampmann, | * * * | |
| Plaintiffs - Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Missouri. |
| Dennis J. Beste, Randy Folkmann, Gary L. Rufkahr, Donald G. Martin, Melton Machine and Control Company Employee Stock Ownership Plan, and Melton Machine and Control Company, | * * * * * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: September 10, 2002
Filed: December 31, 2002

_____

Before BOWMAN, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Gary Eckelkamp, an employee of Melton Machine and Control Company (Melton), and two former employees, Bradley Hoemann and Ronald Kampmann, brought this action against Melton, its employee stock ownership plan (ESOP), and four Melton officers, alleging breach of fiduciary duty claims under the Employee Retirement Income Security Act (ERISA) and Missouri common law, and a

retaliatory discharge claim under ERISA. The district court[1] dismissed the state law claim and granted summary judgment to the defendants on the ERISA claims. Plaintiffs appeal, and we affirm.

## I.

In 1986 the ESOP purchased Melton from founder Vernon Melton for $1.4 million, or $14,000 per share. At that time Melton was transitioning from manufacturing for the bicycle and furniture industries to manufacturing for the automotive industry. This change brought increased sales, and Melton achieved annual sales of more than $20,000,000 by 2000, when its stock was valued at $109,000 per share. Since 1985, the average annual rate of return on Melton stock (including dividends and appreciation) has been approximately 20%.

The employee owners of Melton have shared in the company's success. Excluding the individual defendants, the average employee earns in excess of $100,000 in direct cash compensation each year – 125% over the median market rate for similar positions in other companies. Melton also contributes amounts equal to 15% of each employee's salary to his or her ESOP account and puts an additional 10% into another deferred compensation account, the money purchase pension plan (MPPP). As of September 2000, the average employee with at least one year of service at Melton had accounts valued at $349,560. The twenty largest employee accounts averaged $717,938, again excluding any owned by the individual defendants.

Melton stock is allocated to individual ESOP accounts according to a formula, derived from plan documents and federal regulations, which takes into account tenure

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

with the company and annual eligible compensation. The individual defendants who remain with the company now hold about 30% of Melton shares in their ESOP accounts, and 65% of the shares are concentrated in the accounts of only nine people. In contrast, plaintiff Gary Eckelkamp and thirty three other employees hold less than one share.

The individual defendants are responsible for managing both Melton and the ESOP. Gary Rufkahr is the president and is also a director of Melton, an ESOP trustee, and an ESOP administrative committee member. Dennis Beste and Donald Martin (now retired), have each been ESOP fiduciaries, as well as officers and directors of Melton. Randy Folkmann is an officer and an ESOP administrative committee member.

Plaintiffs allege that in performing their functions the individual defendants violated their fiduciary duties by overcompensating themselves and by failing to obtain accurate annual appraisals of Melton stock. Rufkahr, Beste, and Martin have been responsible for setting employee salaries including their own, and the defense expert acknowledged that the individual defendants have been compensated at least 56% above the median rate for similar positions in comparable companies. The annual appraisals of the company's stock have been performed every year by Everett Mathews, and his figure for the value per share has been used to calculate the worth of each employee's ESOP account. Mathews appraised the value per share for the year 2000 at $109,000, but plaintiffs' expert calculated that the actual value per share was over $200,000.

In January 2000, a Melton employee named Greg Cox took some documents from Rufkahr's briefcase. The documents revealed the compensation paid to Melton executives, and Cox copied them and shared the information with certain other employees, including plaintiff Ronald Kampmann. At the annual stockholder meeting on February 17, 2000, Cox circulated a "public notice" containing

3

information on executive compensation and calling for president Rufkahr to resign. Kampmann was later interviewed about the theft of the documents, but he did not reveal to management that he knew Cox had taken them. Kampmann was terminated effective March 13, 2000, for failure to cooperate in the investigation of the missing documents and for a pattern of work conduct problems.

Plaintiffs brought this action on April 25, 2000. Count I alleged that the individual defendants breached fiduciary duties under ERISA §§ 404, 405, 406 (29 U.S.C. §§ 1104, 1105, 1106), Count II alleged an equitable claim asking for removal of the individual defendants as ESOP fiduciaries, Count III alleged that Kampmann had been unlawfully terminated for exercising rights protected under ERISA § 510 (29 U.S.C. § 1140), and Count IV alleged that the individual defendants had breached fiduciary duties under Missouri law. The district court granted defendants' motion to dismiss the state law claim and their motion for summary judgment on the ERISA claims. Plaintiffs attack these rulings on their appeal, as well as the court's denial of two motions related to evidence.

II.

A.

To establish a breach of fiduciary duty claim under ERISA, a plaintiff must show a breach of a fiduciary duty and "a prima facie case of loss to the plan." See Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917 (8th Cir. 1994); see also Martin v. Feilen, 965 F.2d 660, 671-72 (8th Cir. 1992). "Once the plaintiff has satisfied these burdens, 'the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by…the breach of duty.'" Roth, 16 F.3d at 917 (quoting Martin, 965 F.2d at 671). Summary judgment is warranted when there is no genuine issue of material fact, see id., and we review a grant of summary judgment de novo, see Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 891 (8th Cir. 2000).

4

Plaintiffs allege that the individual defendants breached their ERISA fiduciary duties to the ESOP by using their positions as fiduciaries to overcompensate themselves and by failing to ensure that the annual appraisals were properly conducted. In its summary judgment decision, the district court ruled that the evidence presented on both of these claims was insufficient to raise a genuine issue of material fact.

Plaintiffs rely on the report of their expert, Daniel Callanan of ComStock Valuation Advisors, to establish their ERISA breach of fiduciary duty claims. In his report Callanan states that the individual defendants are overcompensated and that the annual appraisals have consistently undervalued the company. Plaintiffs contend that his opinion is enough to create a genuine issue of material fact on both claims, but summary judgment may be appropriate if an expert opinion is fundamentally unsupported and therefore of no assistance to the trier of fact. See Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1072 (6th Cir. 1999); Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987). Although the district court did not specifically refer to Daubert in its analysis of Callanan's report, it rejected his methodology and concluded that his opinion was of no value and therefore insufficient to create a genuine issue of material fact. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); See also Target Market Publ'g, Inc. v. ADVO, Inc., 136 F.3d 1139, 1142-43 (7th Cir. 1998) (upholding summary judgment where district court implicitly conducted Daubert analysis).

In deciding whether expert evidence should be admitted, a district court must determine whether the expert's methodology is reliable and can be reasonably applied to the facts of the case. See Glastetter v. Novartis Pharm., Corp., 252 F.3d 986, 988 (8th Cir. 2001) (affirming exclusion of testimony by medical expert); see also Daubert, 509 U.S. at 594-95 (focus of Rule 702 inquiry is on principles and methodology of expert). Here, the district court rejected Callanan's methodology with respect to both the overcompensation and improper appraisal theories, and we find

no abuse of discretion in either determination.  See General Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997); United States v. Dico, Inc., 266 F.3d 864, 869 (8th Cir. 2001) (standard of review).

With respect to Callanan's overcompensation analysis, the district court found several methodological flaws.  Callanan failed to take into account the fact that all employees at Melton are paid considerably more than market rates and that the compensation for production employees compares more favorably to the relevant market than that of the individual defendants.  Callanan premised his analysis on comparisons to executive compensation at companies that in many ways were not comparable to Melton.  Many of the companies used for comparison were publicly held, none had achieved Melton's 20% annual rate of growth, and some were not even profitable.  He also did not visit the Melton facility, interview its employees, research the job duties of executives at the comparison companies to ensure that their jobs were actually comparable to those of the individual defendants, or consider the fact that much of their compensation was paid in the form of bonuses contingent on Melton's performance.

The court also found multiple flaws in Callanan's appraisal methodology.  It criticized his use of a 10% "control premium" in his appraisal.  That premium was what he calculated a hypothetical buyer might pay to obtain control of the company, but there was no evidence that the company appeared likely to be sold.  See Estate of Richard R. Simplot v. Commissioner of Internal Revenue, 249 F.3d 1191, 1195 (9th Cir. 2001) (control premium only appropriate on showing that purchaser could obtain and use control for increased economic advantage); Foltz v. U.S. News & World Report, Inc., 865 F.2d 364, 373 (D.C. Cir. 1989) (a "control premium is normally realized *by sale*, an event that would obviously thwart…perpetuation of employee ownership") (emphasis in original).  Callanan also increased his valuation by $450,000 to reflect an amount previously paid in dividends.  The district court concluded this was a form of double counting by Callanan because already distributed

6

dividends were being used to increase the value of the employee ESOP accounts. Callanan also increased his valuation to account for savings that would accrue if the compensation of the individual defendants were reduced. The district court questioned this methodology because there was no indication that Melton's compensation policies would change and value added as a result, citing Shannon P. Pratt et. al, <u>Valuing a Business – The Analysis and Appraisal of Closely Held Companies</u> 705 (4th ed. 2000).

The district court undertook a thorough examination of Callanan's methodology as applied to the facts of this case and determined that it was unreliable. The plaintiffs disputes some of the court's conclusions. They argue, for example, that Callanan used comparable companies in his analysis and that a control premium was warranted because the ESOP owns 100% of Melton. After a careful examination of the record, however, we cannot say that the district court abused its discretion in rejecting Callanan's report and opinion. <u>See</u> <u>Glastetter</u>, 252 F.3d at 989. Since plaintiffs produced no other evidence to show breach of any fiduciary duty under ERISA, the district court did not err in granting summary judgment on these claims.[2] <u>See</u> <u>Roth</u>, 16 F.3d at 917; <u>Martin</u>, 965 F.2d at 672.

Plaintiffs argue that the district court weighed the evidence in deciding to grant summary judgment to the defendants. <u>See</u> <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 150-51 (2000) (court should not weigh evidence at summary judgment stage). To support this argument they point to certain language used in the court's discussion, such as use of the term "unpersuasive" for Callanan's report and the statement that the "credible evidence indicates that [the individual defendants] are paid approximately 56% above the median." <u>Eckelkamp v. Beste</u>, 201 F. Supp. 2d

---

[2]Because we affirm the grant of summary judgment on this basis, we do not need to address the court's alternative basis – that executive compensation is a matter of corporate governance and therefore outside the scope of ERISA.

7

1012, 1224 (E.D. Mo. 2002). The district court's entire discussion must be considered in evaluating its summary judgment ruling, however. The test is whether the record as a whole shows that the court applied the proper standard. See Griffin v. Pinkerton's, Inc., 173 F.3d 661, 664 n.4 (8th Cir. 1999) (isolated remarks do not control). An evaluation of the court's overall analysis shows that rather than weighing the evidence, the court rejected the methodology underlying Callanan's report and concluded that it was therefore insufficient to raise genuine issues of material fact.

We conclude that the district court did not err by granting summary judgment on Count I, which contained the ERISA breach of fiduciary duty claims, or on Count II, which sought removal of the individual defendants as ESOP fiduciaries because of the breaches of duty alleged in Count I.

## B.

Count IV of plaintiffs' initial complaint alleged that the individual defendants breached fiduciary duties owed to Melton under Missouri law by paying themselves excessive salaries. Plaintiffs attempted to bring this claim as a "double-derivative" suit. They claimed that as members of the ESOP they were asserting its right to bring a derivative claim as the sole shareholder of Melton. The district court dismissed the claim as preempted by ERISA and for lack of standing to assert a double derivative action under Missouri law.

ERISA contains an express preemption provision, which states "[e]xcept as provided in subsection (b)…, the provisions of [ERISA]…shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (ERISA § 514(a)). In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983), the Supreme Court stated that a law "relates to" an employee benefit plan under § 514(a) if it (1) expressly refers to, or (2) has a connection to such

8

a plan. Defendants sought dismissal of this claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. They contended that the Missouri law on derivative actions "has a connection" to the ESOP, even if it does not "expressly refer" to employee benefit plans. We review Fed. R. Civ. P. 12(b)(6) dismissals de novo. See Ring v. First Interstate Mortg., Inc., 984 F.2d 924, 926 (8th Cir. 1993).

Our court has identified seven factors to consider in determining whether a state law claim has a connection to an employee benefit plan: whether the state law (1) negates an ERISA plan provision; (2) affects relations between primary ERISA entities; (3) impacts the structure of ERISA plans; (4) impacts the administration of ERISA plans; (5) has economic impact on ERISA plans; (6) whether preemption of the state law is consistent with other ERISA provisions; and (7) whether the state law is an exercise of traditional state power. See Wilson v. Zoellner, 114 F.3d 713, 717 (8th Cir. 1997); Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991). The district court analyzed these factors and determined that plaintiffs' state law breach of corporate fiduciary duty claim is preempted by ERISA. The claim involves exactly the same parties and relies on exactly the same facts as the ERISA breach of fiduciary duty claim. Plaintiffs also seek the same relief under both claims – an order requiring the individual defendants to "restore to the ESOP all losses resulting from their breaches of fiduciary duty…and to pay the ESOP an amount representing a disgorgement of ill-gotten profits."

Application of the seven factor test favors preemption of plaintiffs' state law claim. Use of a state law by beneficiaries to sue other primary ERISA entities would doubtless affect their relations. The structure of the ERISA plan would be altered if beneficiaries were to sue on its behalf because federal law grants the plan trustees "exclusive authority and discretion to manage and control the assets of the plan." See 29 U.S.C. § 1103. To permit ESOP beneficiaries to assert rights granted to the trustees would also alter the administration of the plan. Since the requested relief

9

would involve payments to the ESOP, it would have an economic impact on the plan. Preemption in these circumstances could be consistent with other ERISA provisions, especially 29 U.S.C. § 1103, which grants the trustee exclusive authority to control plan assets. Although permission to bring a breach of fiduciary duty claim against corporate officers is an exercise of traditional state power, permission for ERISA beneficiaries to assert such a claim is not. All these factors favor preemption, and several of them weigh heavily in that direction. We therefore conclude that the Missouri law breach of fiduciary duty claim is preempted. See Arkansas Blue Cross & Blue Shield, 947 F.2d at 1345 (court must look to totality of state law's impact on plan and consider both how many factors favor preemption and how heavily each factor favors preemption).

Plaintiffs' reliance on Delta Star, Inc. v. Patton, 76 F. Supp. 2d 617 (W.D. Pa. 1999), is misplaced. Preemption was not an issue in Delta Star. In that case a former company president, director, and ESOP fiduciary was found to have breached fiduciary duties under both ERISA and state law, but the state claims in Delta Star had been brought under state law by the corporation and the ERISA claims under federal law by the ESOP. Id. at 632-40. Here the ESOP owned company is not seeking to bring a claim for breach of fiduciary duty, but the ESOP beneficiaries are seeking to assert such a claim on behalf of the ESOP. Such claims are appropriately brought under ERISA. See Martin, 965 F.2d at 667 (ESOP fiduciary sued for breach of fiduciary duty for failing to bring a derivative claim on behalf of ESOP).

C.

The district court also granted summary judgment on Count III, Kampmann's claim for retaliatory discharge under 29 U.S.C. § 1140 (ERISA §510). Section 510 provides that an employee cannot be discharged for "exercising any right to which he is entitled under the provisions of an employee benefit plan…or for the purpose of interfering with the attainment of any right to which such participant may become

entitled under the plan." Claims under § 510 are analyzed under a burden shifting procedure like that in discrimination cases. See Kinkead v. Southwestern Bell Telephone Co., 49 F.3d 454, 456 (8th Cir. 1995). First, the claimant must establish a prima facie case by showing a causal connection between "participation in a statutorily protected activity and an adverse employment action." Id. If a prima facie case is shown under § 510, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer does so, the burden shifts back to the claimant to prove that the proffered reason is pretextual." Id.

The district court concluded that Kampmann established a prima facie case by pointing to evidence of the short time between his discharge and his protest of management practices concerning the ESOP. We agree. An inference of retaliatory motive can be raised by showing a discharge shortly after an exercise of protected rights. See id. Summary judgment on this claim is nonetheless warranted, however, because Melton provided nondiscriminatory reasons for the discharge, and Kampmann did not meet his burden to show the given reasons were pretextual. See Montgomery v. John Deere & Co., 169 F.3d 556, 561 (8th Cir. 1999); Kinkead, 49 F.3d at 456.

Kampmann was given a letter stating that his discharge had been based on his work history and his failure to cooperate with the investigation into the purloined documents. There is evidence in the record that Kampmann had a history of behavior problems at work. He made disparaging comments about Melton employees to customers. He was criticized for playing a radio at his work station and told to improve his relationship with other coworkers. Kampmann admits that he "repeatedly made disparaging comments about management both inside and outside the company" and that he posted his pay stubs to "rebel against the highly [sic] secrecy of the whole company." The record also shows that Kampmann knew that Cox had stolen the documents, that he did not reveal that information to management when directly

11

questioned about it, and that he had attended meetings where the documents were discussed by several workers. Since legitimate nondiscriminatory reasons were shown for Kampmann's termination and he did not meet his burden to show they were pretextual, summary judgment was proper on his retaliatory discharge claim.

## D.

Plaintiffs also appeal the district court's denial of their motion to strike portions of affidavits by Jerry Germain, who was Melton's accountant, and by Everett Mathews, who had conducted the annual appraisals of Melton. Plaintiffs object that portions of the affidavits amount to undisclosed expert opinion and that a written report should therefore have been furnished under Fed. R. Civ. P. 26(a)(2) and the court's case management order. Germain's affidavits included facts regarding executive compensation at other companies which showed the basis for his advice to Rufkahr, and the challenged portions of Mathews' affidavit explain why he used a particular valuation method. The district court did not abuse its discretion in refusing to strike these portions of the affidavits. See Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1004 (8th Cir. 1986) ("personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience" provide foundation for lay testimony); Fed. R. Evid. 701 advisory committee note (2000 Amendments) (officers of corporation are permitted to testify to matters such as value of business or projected profits without being qualified as an expert due to "particularized knowledge that the witness has by virtue of his or her position"); see also Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864 n.3 (8th Cir. 1997) (standard of review).

## E.

Finally, plaintiffs protest the district court's denial of leave to file a rebuttal expert report or to substitute a declaration of their counsel as an alternate source of

factual support in opposition to summary judgment. We review the district court's decision for abuse of discretion. See Knoth v. Smith & Nephew Richards, 195 F.3d 355, 358 (8th Cir. 1999). Plaintiffs argue that they timely filed their rebuttal expert report under Fed. R. Civ. P. 26(a)(2)(C), which requires disclosure of rebuttal experts within 30 days after the expert disclosure by the other party. Plaintiffs did not move for leave to file this report until August 3, 2001, however, and defendants' expert report had been produced on June 18. Even if plaintiffs did not have all the data needed to produce a timely rebuttal report, they knew one was needed and could have moved for leave to file much earlier. Moreover, the thirty day requirement in Rule 26(a)(2)(C) only applies "in the absence of other directions from the court or stipulation by the parties." The district court's case order set its management requirements and did not provide for rebuttal experts, and the court was entitled to hold the parties to that order. The district court also denied leave to substitute counsel's declaration, finding that it was nothing more than an attempt to make an end run around its decision on the report since it included material very similar to the summary exhibits and supporting documentation in the rebuttal report. Appellants have not shown that the district court abused its discretion by denying leave to file the rebuttal report or counsel's declaration.

## III.

For the reasons discussed, the district court did not err by granting summary judgment on the ERISA claims, by dismissing the state law claim, or by its evidentiary rulings. We therefore affirm the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13